The opinion or the Court was delivered by
Nott, J.
It appears by Reeves, History of the English Law, that *353 house breaking was formerly considered burglary, whether committed by day or night, if it was with intent to kill, rob, or beat a person, reposing there in peace. 2 Reev. En. Law, 352. 2 lb. 271. 3 lb. 123. 4 lb. 472. And the first case, says the same author, in which it was determined, that it must be by night, was in 4 Edward 6. Since that time a burglar is defined to be one “ who, by night, breaketh and entereth into a mansion house with an intent to commit a felony.” 4 Blackstone’s Com. 224.
I recur to those old authorities only for the purpose of showing what, I think, must necessarily be inferred from them, that subjecting a person to a capital punishment merely for breaking a house in the day time, with an intention only of committing a breach of the peace, could have been only for the personal protection of the owner of the house, and his family, and his immediate habitation. It was an immunity afforded to a man’s dwelling or mansion house, which is considered as his castle, and a sanctuary to all who are within it. And this also agrees with Mr. Justice Blackstone, who says, that no distant barn, warehouse, or the like, is under the same privileges, nor looked upon as a man’s castle of defence, nor is the breaking open houses, wherein no one resides, and which, therefore, forthe time being, are notmansion houses, attended *with the same circumstances of midnight terror. It is true this privilege has been extended, by the successive decisions of Courts, to other buildings, being parcel of the mansion house, and within the common fence, if within the curtilage or homestall. 4 Black. Com. 225. But we ought not to be astute to extend by construction, beyond the original object of the law, a principle which subjects a person to the heavy penalty of death, for the mere attempt to commit a crime. It cannot be, that because an out house is within the same inclosure with the mansion house, it is entitled to the same protection ; because it may be a field of ten acres or more. It cannot depend on contiguity, .as appears by Garland’s ease, (Leach’s Crown Law, 145,) where the house broken open was separated from the dwelling house by a passage of only eight feet.
A house, then, to be parcel of the mansion house, must[1] be somehow connected with, or contributory to it, such as a kitchen, smoke-house, or such other as is usually considered as a necessary appendage of a dwelling house. It cannot embrace a store, blacksmith shop, or any other building separate from it, and appropriated to another and a distinct use. I admit, that a store will be so considered, if in a part of the house, or under the same roof, or if any of the family sleep in it. And this view, I think, is supported by the best authorities on the subject. To break and enter a shop, not parcel of the mansion house, in which the shopkeeper never lodges, but only works or trades there in the day time, is not burglarly, but only larceney ; but if he, or his servant, usually or often lodge in the shop at night, it is then a mansion house, in which burglary can be committed. 1 Hale, P. C. 557-8. 1 Jacob’s L. D. 380.
In the case of the King v. Gibson, et al., (Leach’s Crown Law, 320,) which was an indictment for burglary, in breaking and entering a shop wherein no person slept, the indictment was supported alone on the *354 ground, that it was “ withiu the same building and same roof,” of the dwelling house.
M’Duffie, for the motion. Davis, Solicitor, contra.
*Tbere is another view of this case, which I think will lead us to the same conclution. The dwelling house was let to Mr. Garvin, for the accommodation of his family ; and whether he was tenant for years, at will, or in any manner, I hold perfectly immaterial. He occupied it for his own exclusive use. But the store was kept exclusively for the use of Maverick. It was therefore severed from it, and as no one slept there, it could not be considered as a dwelling house, in which a burglary could be committed. 4 Black. Com. 225-6.
I am of opinion, therefore, that a new trial ought to be granted on the first ground. I do not think that the indictment could have been supported, if the offence had been alleged to be committed in the house of Maverick, instead of Garvin ; because he did not reside therein.
It is asked, are houses of this description to be unprotected 1 I answer, no. If a person steals from an out house, it is larceny, but not burglary. It is entitled to the same protection as banks, warehouses, jeweller’s shops, and all other houses detached from the dwelling house, where the richest treasures of the State, and of individuals, are deposited, and if that is not a sufficient protection, the remedy is with the Legislature, and not with this Court.
My brother Gantt concurs with a majority of the Court, in granting a new trial, but for different reasons than those which I have given. He is of opinion that the store was within the curtilage, and therefore constituted a part of the mansion house. But he considers Garvin only as the servant of Maverick, and therefore it ought to have been alleged to be the dwelling house of Maverick, and not Garvin. I agree with him, that the store must be considered as the house of Maverick, and that so far as Garvin had any agency in it, he was his servant. But as he did not sleep there, it cannot be considered as a dwelling house, and therefore not the subject of burglary. And as it regards the dwelling house, Garvin occupied* it in his own right, for his own exclusive use, and not as the servant of Maverick.
Gantt and Richardson, JJ., concurred.
Johnson, J., dissented.

 4 Strob. 372, 397.